**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL LAYMAN,

                            Petitioner,

            - v -                                              Civ. No. 9:02-CV-1095
                                                                     (NAM/RFT)

VICTOR T. HERBERT, Superintendent,

                            Respondent.

**APPEARANCES:**                                **OF COUNSEL:**

MICHAEL LAYMAN
Petitioner, *Pro Se*
97-A-6469
Attica Correctional Facility
P.O. Box 149
Attica, New York 14011

HON. ELIOT SPITZER                              NELSON R. SHEINGOLD, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Attorney for Respondent
Litigation Bureau
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                    **REPORT RECOMMENDATION and ORDER**

        *Pro se* Petitioner Michael Layman was convicted by a jury of manslaughter in the first

degree on August 1, 1997, for the death of his brother James Layman ("the Decedent").  Trial

Transcript of Michael Layman, dated July 29-August 3, 1997 ("Trial Tr.") at p. 564.  On September

17, 1997, Petitioner was sentenced to an indeterminate term of ten (10) to twenty (20) years.

Sentencing Tr. at p. 76.   Petitioner presently seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C.

§ 2254 on the following grounds: 1) the trial court failed to charge the jury regarding circumstantial

evidence, 2) the prosecutor impeached his own witness, 3) the trial court abused its discretion by issuing an improper *Sandoval* ruling regarding prior convictions, and 4) the trial court failed to suppress a written statement in violation of Petitioner's *Miranda* rights.  Dkt. No. 1, Pet. at ¶ 12.[1] For the reasons to follow, it is recommended that the Petition be **DENIED**.

### I. BACKGROUND

The following facts were adduced at trial.  On the night of September 5, 1996, Michael Layman and Sarah Horowitz ("Horowitz"), the girlfriend of Michael Layman, were sitting on the front porch of the house they shared with James Layman, Georgia Winchip, Scott Marrott and Scott Marrott, Jr.  Trial Tr. at pp. 123 & 125.  While Layman and Horowitz were sitting on the porch, the Decedent brought the garbage out and proceeded to yell at Layman and Horowitz, which caused Layman to follow his brother into the alleyway and yell back.  *Id*. at p. 126.  During the argument, Petitioner repeatedly hit his brother.  *Id*. at p. 134.  After the fight, the Decedent stumbled up the stairs to go into the house.  *Id.* at p. 127.  Layman then asked his brother if he wanted to go to the emergency room but the Decedent declined.  *Id.*  Two days after this fight, on September 7, 1996, James Layman was found dead in his bedroom.  *Id.* at p. 157.

On September 8, 1996, Sergeant Tashjian asked Layman and Horowitz if they would come down to the town police station to provided some background information as to a possible altercation between the Decedent and some youths along with any other information that could provide a motive.  Suppression. Hr'g Tr., dated Apr. 29, 1997, pp. at 12-13, 15-16 & 18.  Layman and Horowitz voluntarily rode with the police officers in the police car.  *Id.* at p. 13.  Neither were

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and N.D.N.Y.L.R. 72.

restrained in the car. *Id.* Layman and Horowitz arrived at the station for questioning and forty-five minutes after questioning had begun, Layman became upset that the death was ruled a homicide and told Detective Grogan and Sergeant Tashjian about the fight he had with his brother and that he had not "mean to do what he had done to his brother." *Id*. at p. 18. Layman stated that he did not think the death should be ruled a homicide because it was an accident. *Id.* at pp. 41-42. At that point, Detective Grogan stopped the conversation and administered *Miranda* Warnings. *Id*. After Layman initialed the *Miranda* Warnings that had been read to him, he waived his right to an attorney and proceeded to talk to Detective Grogan. *Id.* at pp. 24-25. While speaking to the Detective, Layman stated he had a temper and that he had punched his brother, slammed his head on the ground, and kicked him. *Id.* at pp. 26 & 27. Detective Grogan then typed Layman's statements and Layman signed the document. *Id.* at p. 30-31. Petitioner was then placed under arrest. *Id.* at p. 55.

Prior to trial, a suppression hearing was held to determine: 1) if Petitioner was in custody at the time he made his statements to the police, 2) if his first oral statement was admissible, and 3) if there was a knowing and voluntary waiver of Layman's *Miranda* rights. Decision and Order, dated June 13, 1997, at pp. 65-68. The trial court stated he was not in custody at the time the first statement was made, that the first statement was spontaneous and admissible, and that Petitioner had knowingly and intelligently waived his *Miranda* rights. *Id.* at pp. 67-68. Then, immediately before the trial began, the trial court made a *Sandoval* ruling on the prior convictions that could be inquired in to by the prosecutor on cross-examination for impeachment purposes if Layman were to testify. Trial Tr. at p. 13. There were eleven prior convictions and two parole violations that the prosecutor had asked the trial court to consider. *Id.* at 15-20. In weighing the probative value of the convictions and violations against the prejudice, the trial court allowed the prosecutor to question

Layman, if he were to take the stand, on nine of the convictions, two of them resulting in a *Sandoval* compromise,[2] and the two probation violations.  *Id.* at pp. 23-25.[3]

At trial, the prosecutor questioned Horowitz about statements she had made to the police. *Id.* at p. 129.  The prosecutor had asked if Horowitz had told the police two days after the incident that she saw the Decedent fall and strike the side of his head on the step of their apartment.  *Id.* at p. 128.  When Horowitz answered "yes," the prosecutor had her examine the police report to refresh her recollection of the information that had been provided to the police in the report.  *Id.* at pp. 128-30.  After reviewing the report, the prosecutor asked her if the report contained the statement she had made about the Decedent falling and Horowitz stated that the police claimed that the particular incident did not occur and therefore they would not include the statement in their report.  *Id.* at pp. 129-31.  The prosecution then called several more witnesses, but the defense rested without calling any witnesses, including Layman.  *See id.* at pp. 112-396 & 402.  Before the case was submitted to the jury, the trial court held a brief conference to discuss the charge the jury was to receive with the prosecutor and defense attorney since neither side had requested a charge prior to the conference. *Id.* at pp. 415-16.  The only charge discussed was regarding medical treatment provided to the

---

[2] A *Sandoval* compromise occurs when a court allows the prosecution to inquire into a petitioner's prior conviction without inquiring into "the nature of the crime or the underlying facts" if the petitioner were to testify at trial. *O'Connor v. Kuhlman*, 2005 WL 2063817, at *1 (S.D.N.Y. Aug. 25, 2005).

[3] The convictions and violations of probation that were discussed are as follows: 1) a conviction on December 9, 1974 for a bad check charge; 2) a conviction on April 18, 1975 for the unauthorized use of a motor vehicle, reckless driving, and possession of stolen property; 3) a conviction on April 24, 1979 for criminal trespass; 4) a conviction on May 7, 1980 for attempted arson; 5) a conviction on November 19, 1987 for criminal trespass; 6) a violation of probation on March 3, 1988, which incorporated a plea to assault; 7) a conviction on March 16, 1989 for criminal mischief; 8) a violation of probation on June 28, 1990; 9) a conviction on June 17, 1991 for assault; 10) a September 11, 1995 disorderly conduct conviction with an order of protection issued; and 11) a conviction on September 19, 1995 for criminal contempt.  Trial Tr. at pp. 15-20.  The court did not allow an inquiry as to convictions number 1 & 3 and the assault merged into the probation in 1988.  *Id.* at pp. 23-24.  A *Sandoval* compromise was reached on convictions number 9, 10 & 11.  *Id.* at pp. 24-25.

Decedent during the period from when the fight occurred to the point the Decedent died, and that

charge was denied. *Id.* at pp. 416-419.  There were no other requests made for any other charges.

*Id.* at p. 419.

Thereafter, a jury convicted Petitioner of manslaughter in the first degree on August 1, 1997.

Judgment was entered by the Albany County Court on August 1, 1997, and Layman was sentenced

on September 17, 1997.  Judgment was affirmed on appeal to the New York State Supreme Court,

Appellate Division, Third Department on June 7, 2001.  *People v. Layman*, 725 N.Y.S.2d 744 (N.Y.

App. Div., 3d Dep't 2001).  Leave to appeal to the Court of Appeals was denied on July 18, 2001.

*People v. Layman*, 756 N.E.2d 89 (N.Y. 2001).  This Petition followed.

## II.  DISCUSSION

### A.  Standard of Review

According to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

federal court may not grant *habeas* relief to a state prisoner claim unless the state courts adjudicated

the merits of the claim and such adjudication either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the Supreme Court of the United
> States; or (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001); *see also Miranda v.
Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003).

The AEDPA also requires that in any such proceeding, "a determination of a factual issue made by a

State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Boyette*, 246

F.3d at 88 (quoting § 2254(e)(1)).

### B. Jury Charge Regarding Circumstantial Evidence

Petitioner asserts that the evidence presented at trial was purely circumstantial and, as such, the trial court erred in failing to give an instruction to the jury regarding circumstantial evidence. Pet. at ¶ 12. At trial, the court reviewed the charge to be given to the jury with both attorneys and neither made any reference to a circumstantial evidence charge. Trial Tr. at pp. 415-16 & 419. The Appellate Division, Third Department found that failure to include the jury charge as to circumstantial evidence was unpreserved "since defendant neither requested such charge nor voiced objection upon its omission." *Layman*, 725 N.Y.S.2d at 747.

Federal *habeas* review of a state-court conviction is prohibited if a state court rested its judgment on an "adequate and independent state ground." *Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). The adequate and independent state ground will "appl[y] whether the state law ground is substantive or procedural." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). If the state ground is procedural, an inquiry must be made as to "whether there was a fair or substantial basis in state law . . . ." *Garcia*, 188 F.3d at 77 (internal quotation marks and citation omitted).

N.Y. CRIM. PROC. LAW § 470.05(2), also known as "contemporaneous objection rule," states that review on questions of law can only be preserved if the party claiming error makes a protest "'at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.'" *Garcia*, 188 F.3d at 78 (quoting N.Y. CRIM. PROC. LAW § 470.05); *see also Sevencan v. Herbert*, 342 F.3d 69, 72, n.1 (2d Cir. 2002). Therefore, if a defendant does not request a circumstantial evidence charge or if the defendant fails to object to the court not providing such a charge, then it constitutes a failure to preserve the issue for appellate

review.  *People v. Brossoit*, 597 N.Y.S.2d 192, 193 (N.Y. App. Div., 3d Dep't 1993) (citing N.Y.

CRIM. PROC. LAW § 470.05(2)).  The Supreme Court has stated that the contemporaneous objection

rule is a fair and substantial basis in state law for a state court's determination.  *Wainwright v. Sykes*,

433 U.S. 72, 88-90 (1977); *Garcia*, 188 F.3d at 78.

   Layman's claim is procedurally barred since the state court relied upon a procedural rule,

N.Y. CRIM. PROC. LAW § 470.05(2), that does not allow for appellate review of a question of law

that was not preserved or objected to at the trial court level.  Layman had not asked for a

circumstantial charge nor did he object when none was given.  Where a claim is procedurally barred,

a petitioner must then demonstrate cause for his default and resulting prejudice, or present evidence

demonstrating that he is "actually innocent" of the crime of which he was found guilty.  *Coleman*,

501 U.S. at 750; *Ramirez v. Attorney Gen. of the State of New York*, 280 F.3d 87, 94  (2d Cir. 2001);

*Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (citing *Coleman*); *King v.*

*Greiner*, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002) (stating the court is precluded from considering

unexhausted claims "unless petitioner can establish cause to excuse the default and prejudice, or

actual innocence").

   To establish legal cause for his or her procedural default, a petitioner must show that some

objective external factor impeded his or her ability to comply with New York's procedural rules.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

Examples of external factors include interference by officials, ineffective assistance of counsel, or

that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal.

*Murray*, 477 U.S. at 488.  Attorney ignorance or inadvertence is not cause, however, since the

attorney is considered the petitioner's agent when acting, or failing to act, in furtherance of the

litigation, the petitioner must "'bear the risk of attorney error.'"  *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488).

Layman has not demonstrated legal cause for his procedural default regarding the above claim.  Since he cannot establish such cause, this Court need not decide whether he also suffered actual prejudice as to this claim because federal *habeas* relief on the basis of a procedurally defaulted claim is unavailable unless **both** cause and prejudice are demonstrated.  *See, e.g.*, *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.) (citing *Stepney*).  Moreover, Layman has not established that he is actually innocent of the crime of which he was convicted.

Therefore, it is recommended that the Petition for a Writ of *Habeas Corpus* on the ground that the trial court failed to charge the jury regarding circumstantial evidence be **denied**.

### C.  Impeachment of Prosecution's Witness

Petitioner claims that it was improper for the trial court to have allowed the prosecutor to impeach his own witness. Pet. at ¶ 12.  At trial, the prosecutor asked Horowitz if examining the police report would refresh her recollection as to whether she had told the police that the Decedent had hit his head on the step of the house.  Trial Tr. at pp. 129 & 130.  The Appellate Division, Third Department found that the prosecutor was permitted to impeach their own witness "through the use of her prior statement." *Layman*, 725 N.Y.S.2d at 747.  Furthermore, the Third Department found that the prosecutor made a "sincere attempt" to refresh the recollection of Horowitz with regard to the police report without revealing the statements she had made in the report to the jury. *Id.*  Since the prosecutor had made a good faith effort, the court found that there was no error. *Id.*

Claimed errors by state courts are not subject to *habeas* review unless they deprive a

defendant of a fundamentally fair trial. *Estelle v. McGuire*, 502 U.S. 62, 72-75 (1991) (citation omitted). A party is entitled to *habeas* relief on a claim that evidence was improperly admitted against him only where the introduction of that evidence "so infused the trial with unfairness as to deny [the defendant] due process of law." *Lisenba v. California*, 314 U.S. 219, 228 (1941). The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quotation marks and citations omitted). As the *Dowling* Court noted, only a very narrow class of evidentiary infractions violates fundamental fairness. *Dowling*, 493 U.S. at 352.

The Second Circuit has stated that for the erroneous admission of unfairly prejudicial evidence to amount to a denial of due process, the evidence must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (citing *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985)). In assessing materiality, courts are to review the erroneously admitted evidence "in light of the entire record before the jury." *Collins*, 755 F.2d at 19.

According to New York State law, "a party in a criminal case may impeach his own witness with a prior inconsistent statement only if the prior statement is either sworn or subscribed." *Lipinski v. New York*, 557 F.2d 289, 290 (2d Cir. 1977) (citing N.Y. CRIM. PROC. LAW § 60.35). Furthermore, "New York law clearly allows a party in a criminal proceeding to impeach its own witness with previous written or oral statements made by the witness if the witness, 'upon examination by the party who called him . . . gives testimony . . . which tends to disprove the position of the party.'" *Perez v. Greiner*, 2002 WL 31132872, at *4 (S.D.N.Y. Sept. 25, 2002)

(quoting N.Y. CRIM. PROC. LAW § 60.35(1) (alterations in original)); *see also Haden v. Kelly*, 1995

U.S. Dist. Lexis 12760, at *15 (N.D.N.Y. June 1, 1995).  However, under FED. R. EVID. 607, "the

credibility of a witness may be attacked by any party, including the party calling him."  *Lipinski*, 557

F.2d at 293.  Whether using state or federal rules of evidence, "improper impeachment is subject to

harmless error analysis, and will result in reversal of a conviction on appeal only if there is a

'significant probability that, but for the error[], the jury would have acquitted the defendant.'"

*Haden*, 1995 U.S. Dist. Lexis, at *15-16; *see also United States v. Tropeano*, 252 F.3d 653, 659 (2d

Cir. 2001) (holding that the "harmless error analysis will apply to evidentiary errors").

       In this case, Petitioner's argument is based upon N.Y. CRIM. PROC. LAW § 60.35, and federal

*habeas* relief is not available for violations of state evidentiary rules unless Layman was deprived of

a fundamentally fair trial.  Here, Layman was not deprived in any way of a fundamentally fair trial

nor was improper evidence admitted at trial that resulted in a denial of due process.[4]  The court's

evidentiary ruling on this matter that impeachment is permitted and that a good faith effort was

made to refresh Horowitz's recollection was neither contrary to, nor involved an unreasonable

application of federal law as determined by the Supreme Court, nor was the decision based on an

unreasonable determination of the facts.  In fact, impeachment of a witness is specifically authorized

by the Federal Rules of Evidence.  The prosecutor was well within his rights to impeach his own

witness.  In addition, the prosecutor asked Horowitz about statements made in the police report and

after she stated she could not remember the statements made, the prosecutor asked if viewing the

report would refresh the witness's recollection of statements made in the police report.  Trial Tr. at

---

[4] The evidence Petitioner claims was admitted erroneously was based on whether or not the Decedent hit his head on the step while entering the home.  Even if the admission of that evidence amounted to a denial of due process, which it does not, that evidence alone would not have provided the basis for Layman's conviction.

pp. 129-31.  The refreshing of the witness's recollection was proper.

Therefore, it is recommended that the Petition for a Writ of *Habeas Corpus* on the ground that the prosecution impeached its own witness be **denied**.

### D.  Abuse of Discretion Regarding the *Sandoval* Ruling

Petitioner claims that the trial court abused its discretion in its *Sandoval* ruling when it ruled that Petitioner could be questioned about prior convictions, thereby depriving Petitioner of his right to testify and his right to a fair trial.  Pet. at ¶ 12.  During the *Sandoval* hearing, the trial court dealt with eleven prior convictions and two probation violations and allowed cross-examination, if the defendant were to testify, into nine of those convictions, two of those convictions resulting in a *Sandoval* compromise, and the two probation violations.  Trial Tr. at pp. 15-25.  The trial judge allowed those convictions because they were probative as to Petitioner's credibility without prejudicing Petitioner.  *Id.* at p. 14.  At trial, the defense did not call any witnesses and Layman did not testify.  *Id.* at p. 402.  The Appellate Division, Third Department found that the trial court properly weighed the probative value of the prior convictions against the prejudice "in having the jury hear about such acts[.]"  *Layman*, 725 N.Y.S.2d at 747.  Additionally, the court stated that a *Sandoval* compromise was reached regarding the two convictions that involved "assaultive conduct" and that the court was within its discretion to allow an inquiry into a 1975 conviction, despite the "age of the conviction."  *Id.*

In a *Sandoval* hearing, which is evidentiary, the court determines "whether, if the defendant testifies, his prior convictions may be admitted to impeach his credibility."  *Shannon v. Senkowski*, 2000 WL 1683448, at *6 (S.D.N.Y. Nov. 9, 2000); *see also People v. Sandoval*, 314 N.E.2d 413, 416 (N.Y. 1974).  In *Sandoval*, the court stated that

'the rules governing the admissibility of evidence of other crimes represent a balance between the probative value of such proof and the danger of prejudice which it presents to an accused.  When evidence of other crimes has no purpose other than to show that a defendant is of a criminal bent or character and thus likely to have committed the crime charged, it should be excluded.'  Thus, a balance must here be struck between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant's credibility on the one hand, and on the other the risk of unfair prejudice to the defendant, measured both by the impact of such evidence if it is admitted after his testimony and by the effect its probable introduction may have in discouraging him from taking the stand on his own behalf.

*Sandoval*, 314 N.E.2d at 416 (quoting *People v. Schwartzman*, 247 N.E.2d 642, 646 (N.Y. 1968)).

Because the introduction of prior convictions against the defendant is evidentiary in nature, it is "not redressable in a federal *habeas corpus* proceeding absent a showing that the particular errors were of constitutional magnitude."  *Shannon*, 2000 WL 1683448, at *6 (citations omitted); *see also Estelle*, 502 U.S. at 67-68.

The Second Circuit has made it clear that "*habeas* relief for allegedly erroneous *Sandoval* rulings in instances where a defendant elects not [to] testify" is generally barred.  *Shannon*, 2000 WL 1683448, at *6; *see also Luce v. United States*, 469 U.S. 38, 43 (1984).  It is established that

['] a petitioner's failure to testify at trial is fatal to any claims of constitutional deprivation arising out of a *Sandoval*-type ruling . . . .  The reason that a *habeas* petitioner's failure to testify at trial is 'fatal to any claims arising out of a *Sandoval* type ruling' is that absent such testimony, a court has "no adequate non-speculative basis upon which to assess the merits of that claim'."

*Shannon*, 2000 WL 1683448, at *6 (citing *McEachin v. Ross*, 951 F.Supp. 478, 481 (S.D.N.Y. 1997) (quoting *Peterson v. LeFevre*, 753 F.Supp. 518, 521 (S.D.N.Y. 1991) *aff'd mem.*, 940 F.2d 649 (2d Cir. 1991)) (further citations omitted).

Here, Layman alleges that the trial court abused its discretion in its *Sandoval* ruling in allowing some of his prior convictions to be introduced if he elected to testify.[5]  However, the

---

[5] Had Petitioner chosen to testify at trial, then Petitioner would have to show that the trial judge abused his discretion.  *Nieves-Delgado v. New York*, 2003 WL 21310815, at *3 (S.D.N.Y. June 9, 2003).  The "trial judge is given broad discretion to determine what evidence should be admissible in balancing the interest of the People in impeaching the defendant's testimony with the risk of unfairly prejudicing the defendant."  *Id.* (citing *Domingo v. Greiner*, 2002 WL 362761 (S.D.N.Y. March 5, 2002); *People v. Walker*, 633 N.E.2d 472, 474 (N.Y. 1994)).  If a *habeas corpus* were to be

Second Circuit has barred *habeas* relief for alleged erroneous *Sandoval* rulings if the defendant did not testify at trial.  Layman did not testify during the trial.  Trial Tr. at p. 402.  Nonetheless, the court weighed the probative value versus the prejudice that might occur to Petitioner.  *Id.* at p. 25-26.

Therefore, it is recommended that Petitioner's application for a Writ of *Habeas Corpus* on the ground that the trial court abused its discretion by issuing an improper *Sandoval* ruling be **denied**.

### E.  Motion to Suppress

Finally, Petitioner alleges that the trial court failed to suppress his written statement in violation of his Fifth Amendment rights.  Pet. at ¶ 12.  Petitioner also claims he was in custody and that his *Miranda* rights should have been given to him sooner.  Pet'r Mem. of Law at p. 19.  The trial court held a pre-trial *Huntley* hearing[6] to determine if the statements made by Layman to the police would be admissible.  Suppression Hr'g Tr. at p. 8.  The trial court held that Layman was not in custody when he was taken to the police station, that the first statement made by Petitioner was spontaneous and was "not the product of custodial questioning," and the statements made after *Miranda* Warnings were issued resulted from a knowing and voluntary waiver of his *Miranda* rights.  Decision and Order at pp. 67-68.  The Appellate Division, Third Department affirmed the trial court's decision on this issue.  *Layman*, 725 N.Y.S.2d at 746.

According to the AEDPA, a state court's factual findings at a suppression hearing are

_____

granted, there would have to be a finding "that the *Sandoval* ruling involved an unreasonable determination of the facts in light of the evidence." *Id.*  Since Petitioner did not testify, the Court will not determine whether or not there was an abuse of discretion.

[6] The *Huntley* hearing was called a "Suppression Hearing" by the trial court.  Suppression Hr'g Tr. at pp. 7 & 8.

presumed to be correct, and the petitioner has the burden of overcoming that presumption by clear and convincing evidence.  *See Sorto v. Herbert*, 2004 WL 2852358, at *2  (E.D.N.Y. Dec. 13, 2004) (citing 28 U.S.C. § 2254(e)(1)); *James v. Walker*, 2003 WL 22952861, at *6 (E.D.N.Y. Aug. 28, 2003), *aff'd* in an unpublished opinion, 2004 WL 2496742, at *6 (2d Cir. 2004).[7]

"A suspect is entitled to *Miranda* Warnings ***only*** if he or she is interrogated while 'in custody.'"  *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003) (quoting *Thompson v. Keohane*, 516 U.S. 99, 102 (1995)) (emphasis added).  Whether a petitioner was in custody involves both law and fact and, under *habeas* review, there must be an independent examination of the record to "determine whether the petitioner was in custody."  *Nova v. Bartlett*, 211 F.3d 705, 707 (2d Cir. 2000) (citing *Thompson*, 516 U.S. at 112-113).  "The Supreme Court has held that two discrete inquires are involved in determining whether a person was 'in custody.'  First, [the court] consider[s] 'the circumstances surrounding the interrogation.'"  *Parsad*, 337 F.3d at 181 (quoting *Thompson*, 516 U.S. at 112).  Since that is an issue of fact, there is a presumption that the state's court findings are correct.  *Id.* (citing *Tankleff v. Senkowski*, 135 F.3d 235, 243 (2d Cir. 1998) & 28 U.S.C. § 2254(e)(1)).  The second inquiry is "whether, given those circumstances, a reasonable person would have felt 'at liberty to terminate the interrogation and leave,' which is a mixed question of fact and law."  *Id.* at 181-82 (quoting *Thompson*, 516 U.S. at 112-13) (further citations omitted).

In this case, Layman and Horowitz were asked if they would come down to the police station to clarify some events that had transpired between the Decedent and some youths and to get some

---

[7] However, "ultimately legal questions, such as whether a defendant has effectively waived his federal constitutional rights in a proceeding, are governed by federal standards."  *Oyague v. Artuz*, 393 F.3d 99, 104 (2d Cir. 2004) (citation omitted).

background information on the Decedent.  Suppression Hr'g Tr. at p. 12.  Both went voluntarily

after being asked to go to the station.  *Id.*  Detectives Grogan and O'Neil picked them up at their

home and neither Layman nor Horowitz were handcuffed at the time nor restrained in any way.  *Id.*

at pp. 12-13.  Upon reaching the station, Layman was taken to an interview room and Detective

Grogan inquired into the Decedent's background.  *Id.* at pp. 13 & 16.  At a certain point, Layman

became upset that his brother's death had been ruled a homicide.  *Id.* at p. 16.  During that time,

Layman began telling Detective Grogan about the fight he had with his brother.  *Id.* at p. 18.

Detective Grogan then administered *Miranda* warnings to Layman and after the *Miranda* warnings

were read to Layman, Layman initialed each warning to indicate he understood them.  *Id.* at pp. 18

& 24.  Petitioner waived his right to an attorney and consented to proceed with the questioning.  *Id.*

Layman admitted the extent of the fight with his brother and that he thought the fight had caused his

death.  *Id.* at pp. 25-27.  Layman then signed the written statement and was subsequently arrested.

*Id.* at pp. 30 & 34.

In this case, the trial court found in the *Huntley* hearing that Layman was not in custody, his

first statement was spontaneous and he knowingly and intelligently waived his rights.  Decision and

Order at pp. 67-68.  The Appellate Division agreed with the trial court.  The state court's findings

are presumed correct and Petitioner has failed to overcome the presumption by clear and convincing

evidence.

Even if it was erroneous for the court to allow the first statement, it does not necessarily

make the post-*Miranda* statements inadmissible.  The Supreme Court holds that

> the mere fact that a suspect has made an unwarned admission does not warrant a
> presumption of compulsion.  A subsequent administration of *Miranda* warnings to a
> suspect who has given a voluntary but unwarned statement ordinarily should suffice

> to remove the conditions that precluded admission of the earlier statement. In such
> circumstances, the finder of fact may reasonably conclude that the suspect made a
> rational and intelligent choice whether to waive or invoke his rights.

*Oregon v. Elstad*, 470 U.S. 298, 314 (1985).

To determine the voluntariness of the waiver post-*Miranda*, the court must examine "1) the accused's characteristics, 2) the conditions of the interrogation, and 3) the conduct of the police." *Prasad*, 337 F.3d at 183 (citing *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991)).  Here, there was no coercion or improper tactics taken by the police to get Layman's statement. Furthermore, Layman knowingly and voluntarily waived his *Miranda* rights when Detective Grogan read him his rights and Layman stated he understood them and still gave a written statement of the events that had occurred.  During the questioning of the Decedent's background, prior to the *Miranda* warnings, Petitioner was free to leave at any time.  Only when Layman became upset and told Detective Grogan that he had fought with his brother did Detective Grogan administer *Miranda* rights.  The police did not bring Layman down to the station to question him about his fight with his brother.

Therefore, it is recommended that Petitioner's application for a Writ of *Habeas Corpus* on the ground that the trial court failed to suppress a written statement be **denied**.

### III.  CONCLUSION

For the reasons stated therein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

*-16-*

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. r. Civ. P. 72, 6(a), & 6(e).


Date:   October 26, 2005
        Albany, New York


RANDOLPH F. TREECE
United States Magistrate Judge

*-17-*